# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

FILED at 9 o'clock 26 min A M
Date 6/15/06

United States Bankruptcy Court
Savannah, Georgia

In the matter of: )
)  Chapter 11 Case
POWELL-GARVEY COMPANY )
)  Number 05-43338
           *Debtor* )

## MEMORANDUM AND ORDER
## ON MOTION TO DISMISS FILED BY
## MCINTOSH COUNTY TAX COMMISSIONER

The Debtor's case was filed on December 2, 2005. On March 16, 2006, Wanda Nelson, Tax Commissioner of McIntosh County, Georgia, filed a Motion to Dismiss. This Court held a hearing on May 10, 2006 and took the matter under advisement. After considering the evidence presented and applicable law, I make the following Findings of Fact and Conclusions of Law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### FINDINGS OF FACT

The Debtor acquired title to six lots on Barbour Island in McIntosh County as a result of its purchase of that property at a tax sale, followed by a civil action to quiet title to the property that was settled in the Superior Court of McIntosh County on February 18, 2002. *See* Exhibit D-2. Since its acquisition of the property, the Debtor has failed to pay any *ad valorem* taxes that have accrued on the subject real estate. The Commissioner asserts that total taxes, penalties, and accrued interest exceeds $34,000.00. Because of the Debtor's

failure to pay the delinquency, the Commissioner commenced an action to sell the property at public outcry, which was scheduled for December 6, 2005, but halted by the filing of this Chapter 11 case.

The Commissioner alleges that this case was filed in bad faith under the controlling precedent of In re Phoenix Piccadilly, Ltd., 849 F.2d 1393 (11th Cir. 1988), and that there are two additional impediments to the Debtor obtaining relief under Chapter 11.

First, the Commissioner is the only creditor in this case, and she rejects the Debtor's assertion that its tax liability is substantially lower than the amount claimed by the Commissioner. As a result, the Debtor's Chapter 11 plan is not confirmable even under the cram down provisions of 11 U.S.C. § 1129(b)[1] because the sole impaired class of claims in this case will not vote to accept the plan treatment of its claim as required by Section 1129(a)(10).

Second, the Commissioner relies on the provisions of Section 505(a)(2), as amended by BAPCPA, which now prohibits a bankruptcy court (which otherwise has the authority to determine tax liabilities) from determining:

> (C) the amount or legality of any amount arising in connection with an ad valorem tax on real or personal

---

[1] Hereinafter, all Section references are to Title 11 of the United States Code.

2

property of the estate, if the applicable period for contesting or redetermining that amount under any law (other than a bankruptcy law) has expired.

The Debtor contends that this Court should overrule the Commissioner's Motion to Dismiss and retain jurisdiction because the Court is not being asked to make a determination of tax liability within the meaning of Section 505(a)(2)(C). Rather, the Debtor, in a related adversary, is asking the Court to enter a declaratory judgment that the Commissioner is wrongfully employing a higher valuation and assessment for ad valorem tax purposes than is permissible. *See* Adv. Pro. 06-4032. This contention is based on the following facts.

At the time the Debtor purchased the subject lots at a tax sale in 1999, it filed, as required by law, a real estate transfer tax declaration on Form PT-61. *See* Exhibit TC-1. The Debtor argues that the filing of the Form PT-61 constituted the filing of a return of property with the Commissioner and that the valuation shown on each Form PT-61 filed for each lot should be established as the fair market value of the property for tax assessment purposes.

The Commissioner claims that the tax assessments of the various parcels for 1999 that were binding on the Debtor in that year ranged from $19,800.00 to $28,600.00 each. *See* Exhibit TC-2. The Commissioner further contends that those valuations carried forward from year to year unless the Debtor filed a return setting forth a different valuation. The Commissioner further points out that in 2004, as a result of a county-wide reappraisal

of real property values, the fair market value of these six lots was increased from the then existing values to $30,000.00 per lot and that the Commissioner's billing for unpaid taxes, penalties, and interest are based on these higher values. *See* Exhibit TC-3.

## CONCLUSIONS OF LAW

As a preliminary matter, I must reject the Debtor's attempt to distinguish the provisions of Section 505 from the present case. Although the Debtor couches its position in slightly different terms, it is clear that what it is asking this Court to do is to make a determination of its liability based on the vastly lower valuation listed on the Debtor's Form PT-61 rather than the county appraisal figures.

The language of Section 505(a)(2)(C) is very broad. This Court cannot determine "the amount or legality of *any amount arising in connection with* an ad valorem tax on real or personal property of the estate" if the applicable period for contesting or redetermining that amount has expired. 11 U.S.C. § 505(a)(2)(C) (emphasis added). The Commissioner issued tax bills in 1999 covering the six lots, and each tax bill contains a fair market value and an assessed value. *See* TC-2. Regardless of whether the Debtor is correct that the value listed in the Form PT-61 contains the proper valuation for tax purposes, Georgia law provides the proper method of appealing and contesting the value of property assessed by government authorities. *See* O.C.G.A. § 48-5-311. Because the time period permitted by Georgia law to contest the Commissioner's assessment of the value of the Debtor's six lots has been long expired, the net effect of this Court taking jurisdiction to

declare the Commissioner's valuation and assessment incorrect would be a violation of Section 505(a)(2)(C).

In the alternative, I conclude the Commissioner's position on the merits of this dispute to be meritorious. The Form PT-61 executed by the Debtor contains the following language:

> BUYER: I hereby certify that all information on this form is true and correct to the best of my knowledge and belief. I acknowledge that if the above property is taxable and is subdivided or improved during the year of this transfer, that I must return it for taxation the following year, but if there are no changes and I do not elect to file a return, I will be deemed to have returned the property at the same valuation as was finally determined for the year of this transfer. I further acknowledge that this form does not relieve me of the responsibility of filing a return for personal property or of applying for homestead or other exemptions.

*See* TC-1. This language clearly demonstrates that if the Debtor wished to pay taxes on a valuation other than that assessed by the Commissioner, the Debtor had to file a return setting forth the asserted value for the following year. Upon failing to make such a return, however, the Debtor was deemed to have filed a return at the same valuation set by the Commissioner. This language that is found in the Form PT-61 closely tracks the statutory language of the automatic renewal statute found in the Georgia code. *See* O.C.G.A. § 48-5-20(a)(2).

It is clear that Georgia courts interpret O.C.G.A. § 48-5-20(a)(2) to consider a Form PT-61 as a transfer tax form as well as a return. *See* <u>Cobb County Bd. of Tax Assessors v. Morrison</u>, 249 Ga. App. 691, 692, 548 S.E.2d 624, 626 (2001); <u>Fulton County Bd. of Tax Assessors v. Butner</u>, 258 Ga. App. 68, 70, 573 S.E.2d 100, 102 (2002). Furthermore, the Commissioner does not challenge the Debtor's assertion that the Form PT-61 qualifies as a tax return, only its assertion that the value shown on that form trumps the Commissioner's existing valuation. The Commissioner is correct. O.C.G.A. § 48-5-20(a)(2) does not state that the valuation of property listed in a Form PT-61 controls for property tax assessment purposes.[2] Rather, the statute states that if no subdivision of the property has occurred, the return is deemed to have been returned "at the same valuation" as in prior years. The proper value to be assigned to the real estate is this carry-forward value, not the amount shown on Form PT-61. *See* <u>Morrison</u>, 249 Ga. App. at 693.

These dual considerations inevitably lead to the conclusion argued for by the Commissioner. Since this Court is prohibited from recalculating the tax liability owed by the Debtor, the Commissioner's interpretation of the law is correct, and the Commissioner opposes confirmation of a Chapter 11 plan, no reorganization is possible, even under the cram-down provisions of Section 1129(b). Coming on the eve of a tax foreclosure, the filing

---

[2] The Georgia Real Estate Transfer Tax "is not a property tax; it is an excise tax on transactions involving the sale of property." <u>City of Columbus v. Ronald A. Edwards Constr. Co., Inc.</u>, 155 Ga. App. 502, 503, 271 S.E.2d 643 (1980). Furthermore, the "amount of the tax is based on the sales price of the property; it is not a tax on the property *as such*, as is the ad valorem tax which is charged against the owner of the property or against the specific property." <u>Id.</u>

of this Chapter 11 case may have been in bad faith as argued by the Commissioner. Reaching such a conclusion is not necessary, however, because I conclude that even if the filing is deemed to have been a good faith effort to reorganize, this Court must affirm the Commissioner's position as required by Section 505(a)(2)(C) and on the merits.

## ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the Commissioner's Motion to Dismiss be GRANTED. Furthermore, the dismissal of the Debtor's bankruptcy case renders Adversary Proceeding No. 06-04032 moot. Therefore, that Adversary Proceeding is also DISMISSED.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 13th day of June, 2006.